**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CHERIAN HAMILTON,**

      **Plaintiff,**

**v.**                                                                 **CASE NO. 8:05-CV-2138-EAJ**

**MICHAEL J. ASTRUE,**[1]
**Commissioner of Social Security,**

      **Defendant.**

_____ /

**<u>FINAL ORDER</u>**

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Supplemental Security Income ("SSI") under the Act.[2]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Therefore, pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 14).

1

applicable legal standards.  See 42 U.S.C. § 405 (g) (2003).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.  Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citations omitted).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard.  See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required.  See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I.

Plaintiff filed an application for SSI payments on November 6, 2002, claiming an onset of disability beginning August 31, 2000. (T 58, 50) Plaintiff's application was denied initially, upon reconsideration, and by the ALJ in a decision issued on June 28, 2005. (T 12-26) The Appeals Council declined to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (T 4-6)

The ALJ found that Plaintiff was not eligible for SSI payments because she was not disabled at any time through the ALJ's decision on June 28, 2005. (T 25) Plaintiff filed a timely petition for judicial review of the Commissioner's denial of benefits. Plaintiff has exhausted all administrative remedies and the Commissioner's decision is ripe for review under the Act.

Plaintiff, forty-seven years old at the time of the hearing on April 11, 2005, has a high school

general equivalency degree and pursued some college. (T 56, 388-89) Plaintiff has previously been employed as a cook, cashier, van driver, and counselor. (T 51, 64) Plaintiff asserts that a combination of impairments including a back injury and bipolar disorder have rendered her unable to work since August 31, 2000. (T 50) The ALJ determined that Plaintiff has not engaged in substantial gainful employment since her alleged onset date. (T 24, 25)

Following the administrative hearing, the ALJ found that Plaintiff has "a history of work related injury to the right hand; history of automobile accident injuries with back and neck strain and later evidence of degenerative disease in the low back and neck; history of an injury to the left foot from a bus lift incident; bipolar vs. borderline personality illness and dysthymia; history of post-traumatic stress disorder (PSTD); history of polysubstance abuse in partial to full remission; asthma treated with medication; diabetes mellitus treated with medication and diet; and history of DRESS syndrome."[3] (T 24-25) The ALJ determined that the above impairments are severe; however, the ALJ concluded that Plaintiff's impairments or combination of impairments do not meet or medically equal an impairment listed in the Listing of Impairments found in Appendix 1, Subpart P of Regulations No. 4. (T 25) In addition, the ALJ found that Plaintiff has no more than moderate mental functional limitation in accordance with the Psychiatric Review Technique Form ("PRTF") findings. (Id.)

The ALJ held that Plaintiff has no past relevant work but concluded that Plaintiff has the residual functional capacity ("RFC") to perform a significant range of light work.[4] (T 25)

---

[3] The ALJ describes DRESS syndrome, drug rash with eosinophilia and systematic symptoms, at page three of his opinion. (T 14)

[4] Light work, defined at 20 C.F.R. §§ 404.1567(b), 416.967(b), involves the lifting of not more than twenty pounds occasionally with frequent lifting and carrying of objects weighing up to ten pounds. The regulations further provide: "Even though the weight lifted may be very little, a

3

Specifically, the ALJ found that Plaintiff's RFC encompasses the following limitations:

> Light work with the ability to briefly (for one to two minutes) change positions at least every 1/2 hour; no more than occasional climbing, balancing, stopping, kneeling, crouching or crawling; no exposure to extremes of heat or cold; no exposure to extremes of fumes, dusts, gases or other respiratory irritants; no exposure to significant workplace hazards like heights or dangerous moving machinery; no detailed or complex instructions; no close concentration or attention to detail for the extended periods; no fast paced or assembly line work; no work with the general public; no work in sunlight; no close interaction with the general public; no close interaction with the supervisors; with one additional restroom break in the AM and PM (for two to three minutes); and with an allowance for being able to miss up to one day per month. (SSR 96-5p).

(T 25)

Relying on the testimony of a vocational expert ("VE") in response to hypothetical questions which incorporated these limitations, the ALJ concluded that Plaintiff could perform jobs such as mail clerk, office helper, file clerk, and ticket checker.  (T 24) In reaching the conclusion that Plaintiff had not been under a disability as defined by the Act at any time through the date of the decision, the ALJ held that Plaintiff's statements regarding her limitations were not wholly credible. (T 25)

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

## II.

Plaintiff alleges the Commissioner erred in (1) failing to include in his hypothetical question to the VE all of Plaintiff's limitations; (2) failing to adequately and properly evaluate or credit

---

job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §§ 404.1567(b), 416.967(b).

Plaintiff's subjective complaints of pain; and (3) failing to consider Plaintiff's headaches and sleep disorder in combination with her other impairments and what effect these impairments would have on her ability to perform work-related activities (Dkt. 20).

**A.**     The court will first consider Plaintiff's argument regarding the ALJ's consideration of Plaintiff's headaches and sleep disorder in combination with her other impairments.

Following a car accident in December 1997, Plaintiff complained of headaches to Robin Hughes, M.D. ("Dr. Hughes"), an orthopedic neck and back specialist to whom Plaintiff was referred by her treating physician, Brian Burns, M.D. ("Dr. Burns"). (T 95) Dr. Hughes' evaluation noted that Plaintiff reported a history of migraine headaches prior to the car accident. (T 95, 96) The headaches Plaintiff complained of as a result of the car accident, however, were a "constant dull aching sensation" resulting from "pain radiat[ing] into her temporal and occipital region." (T 95) Plaintiff reported that the headaches resulting from the car accident were different in nature than the migraines. (Id.) Dr. Hughes' diagnostic impression of Plaintiff included "post impact headaches-cervicogenic"; Dr. Hughes did not refer to migraine headaches or give Plaintiff directions for care regarding headaches in her evaluation. (T 97-98)

From December 1997 to May 1998, Dr. Burns treated Plaintiff for neck and back pain. (T 99-106) On February 9, 1998, Dr. Burns noted that Plaintiff "continues to experience constant (75%-100%) moderate neck pain and headaches and lumbodorsal pain." (T 105) The medical records state that on February 13, 1998 Plaintiff was seen for cervical pain, headaches, and lumbar pain with radiation in the legs. (Id.) Dr. Burns' February 25, 1998 treatment notes state that Plaintiff "also presents with acute severe headaches and numbness in the upper extremity on the right. (T 104) Similarly, on February 27, 1998, Dr. Burns stated that Plaintiff "was seen today for cervical pain chronic headaches." (Id.) Although the remainder of Dr. Burns' treatment notes through May 1998

5

continually note that Plaintiff complained of neck and back pain, they otherwise do not specifically refer to complaints of headaches.

Plaintiff was also evaluated by Robert Martinez, M.D. ("Dr. Martinez") in relation to her injuries as a result of the car accident. In a May 14, 1998 complete history and physical, Dr. Martinez stated:

> The patient complains of headaches. The headaches occur on the average of three to four days out of the week. The headaches originate from the neck, then become occipital, bitemporal, bifrontal, consisting of a pressure in her head. The pressure lasts four to five hours.
>
> .   .   .
>
> She has trouble sleeping at night because of the pain. She wakes up 3 to 4 times per night. She doesn't get more than two hours of sleep at a time without waking up. On a scale of 0 to 10, the pain level ranges between a 5 to a 9 1/2 depending on her physical activity level.

(T 110-111)

On June 18, 1998, Plaintiff returned to Dr. Martinez for a final recommendation. (T 115, 107) Dr. Martinez noted that Plaintiff "continues to complain of headaches, neck pain, midback pain, and low back pain. She has severe insomnia." (T 107) Dr. Martinez further noted, "She still has a lot of trouble sleeping at night." (Id.) Specifically, Dr. Martinez' neurological impression was (1) chronic severe cervical, thoracic and lumbosacral strain with palpable fibromyositis; (2) cephalalgia secondary to cervical strain; and (3) insomnia secondary to chronic pain syndrome. (T 107-08)

Medical records from July 2000 indicate that Plaintiff's migraine headaches were relieved with medication. (T 116, 119) A psychological assessment dated January 3, 2003 mentions neither headaches nor insomnia as presenting problems, general medical factors, or activities of daily living factors. (T 128-38) On February 3, 2003, Dr. Martinez again reported that Plaintiff has and trouble

6

sleeping, diagnosing chronic insomnia secondary to chronic pain syndrome (T 153); however, a February 21, 2003 examination of Plaintiff performed by R. Krishna Moorthy, M.D. ("Dr. Moorthy"), a consultive physician, makes no mention of complaints of headaches or insomnia. (T 155-57) In April 2003, Plaintiff reported insomnia to Richard Brown, Ph.D. ("Dr. Brown"), a consultive psychologist, although she did not complain of headaches. (T 187-88) Likewise, medical records from 2003 make no mention of complaints of headaches. (T 207-221) A November 2003 sleep study revealed "grossly abnormal sleep architecture with no Stage III and no Stage IV sleep"; however, the medical records reveal no formal diagnosis and no evidence of ongoing treatment. (T 336-37, 343)

Treatment notes from Erick Grana, M.D. ("Dr. Grana") from January to March 2004 do not reveal complaints of headaches or insomnia; neither does a December 2004 discharge summary from Tampa General Hospital.  (T 244-48, 262) Also in December 2004, Hafiz Muhammad A. Rahman, M.D. ("Dr. Rahman"), Plaintiff's psychiatrist, noted that Plaintiff was "sleeping better." (T 266) In April 2004, David Kalin, M.D. ("Dr. Kalin") reported "right sided headaches with pain radiating over the right jaw"; however, a February 2005 follow-up did not mention headaches. (T 368-72, 377)

At the administrative hearing on April 11, 2005, Plaintiff testified that she has migraine headaches approximately twice per week and they last "all day long." (T 402) Plaintiff further testified that when she takes the medication Imitrex the headaches are relieved for a few hours at a time. (T 402-03) Plaintiff stated that the migraines render her unable to do anything physically other than lie down in her bedroom. (T 403) In addition, Plaintiff testified that while she was experiencing problems sleeping on certain medications, she began taking a different kind of sleeping pill that allows her to sleep. (T 398-99)

7

Also during the hearing, Plaintiff's attorney questioned the VE regarding Plaintiff's testimony that headaches render her unable to work two whole days per week. (T 419) The VE testified that assuming Plaintiff's testimony was accurate regarding her headaches, her inability to work two whole days per week would essentially eliminate the jobs Plaintiff would otherwise be able to perform. (Id.)

The ALJ must make a particular and well-formulated determination of the combined effect of Plaintiff's impairments in determining if she is disabled. Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). In addition to reviewing the medical evidence, the ALJ heard testimony from Plaintiff regarding her headaches and how they affect her daily life. (T 402-03) The ALJ also heard Plaintiff's testimony regarding her ability (or inability) to sleep based on medication she takes. (T 398-99)

In his decision, the ALJ recounts that Plaintiff's most prominent complaints over time have included headaches. (T 15) The ALJ also notes that Plaintiff "has a history of being involved in motor vehicle accidents with chronic back and neck strain and related headache and insomnia due to pain (Exhibit 7F)." (T 16) The ALJ again mentions that Plaintiff "has previously been noted to have headache with cervical strain or tension," and alludes to her testimony regarding her headaches, stating that Plaintiff "claims to have great pain with what she calls migraine headaches two times a week all day long; these are treated with Imitrex . . . . I do not see the level of treatment for migraine headaches she has alleged, even Dr. Kalin, the personal injury physician did not note "migraine" headache in his final diagnostic impressions (Exhibit 25F, Pages 3 and 4)." (T 19)

The ALJ's discussion of Plaintiff's headaches and notation of Plaintiff's history of insomnia reflect that the ALJ considered Plaintiff's headaches and insomnia in evaluating Plaintiff's impairments. The ALJ also addresses Plaintiff's impairments as "severe" but not meeting the Listing

8

of Impairments "either singly or in combination." (T 16) The language in the ALJ's decision indicates that he considered Plaintiff's impairments in combination. See Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (ALJ's statement that claimant did not have a "combination of impairments" that constituted a severe impairment is evidence that the ALJ considered the combined effect of a claimant's impairments). Plaintiff has not shown that the ALJ did not adequately consider Plaintiff's headaches and insomnia or their effect on her ability to work in combination with her other impairments.

**B.**     Next, Plaintiff contends that the ALJ erred in finding Plaintiff's pain testimony not wholly credible (Dkt. 20 at 13). Specifically, Plaintiff argues that the reasons given by the Commissioner for failing to fully credit Plaintiff's testimony are insufficient. Defendant maintains that the medical evidence does not support Plaintiff's complaints of disabling pain or medication side effects (Dkt. 23 at 8).

It is incumbent on the ALJ to make credibility findings as to a claimant's testimony. See generally Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). The Eleventh Circuit has established a three-part pain standard to use when evaluating a claimant's subjective complaints of pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). A plaintiff must show: (1) evidence of an underlying medical condition, and either (2) the medical evidence substantiates the severity of the pain from the condition or (3) that the condition is of sufficient severity that it would be reasonably expected to produce the pain alleged.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted).  This standard is consistent with Social Security regulations which provide that a claimant may establish a disability through subjective testimony of pain if "medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms."  Elam v. R. R. Ret. Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (citing 20 C.F.R. §§

9

404.1529, 416.929).

An ALJ's credibility determination "does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the reviewing court] to conclude that the ALJ considered her medical condition as a whole." <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotation marks and citations omitted). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." <u>Foote</u>, 67 F.3d at 1562 (citation omitted). Similarly, it is the Commissioner's responsibility to draw inferences from the evidence, and those inferences will not be overturned if supported by substantial evidence. <u>Davis v. Apfel</u>, 93 F. Supp. 2d 1313, 1316 (M.D. Fla. 2000) (citation omitted).

In his opinion, the ALJ expressly cited to and applied the applicable pain standard. (T 20) The ALJ analyzed whether the medical evidence supported the severity of Plaintiff's allegations of pain and found that the level of pain Plaintiff claims is not consistent with the record. (T 21-22) Thus, the ALJ found Plaintiff's testimony generally not credible. (T 22)

The question remaining, therefore, is whether the ALJ's assessment of Plaintiff's testimony regarding her symptoms and restrictions is based on substantial evidence. Plaintiff argues that the ALJ gave Plaintiff's prior incarceration, accident claim history, and questions surrounding whether she made a choice to protect her infant granddaughter before seeking medical treatment for herself as reasons for discrediting her testimony and allegations of disability, and that these were insufficient bases for discrediting Plaintiff (Dkt. 20 at 14).

However, this court concludes that the ALJ's decision to discredit Plaintiff's testimony is supported by substantial evidence. Contrary to Plaintiff's assertion, the ALJ cited specific evidence for rejecting Plaintiff's testimony as to the effect of her impairments. For example, the ALJ noted

10

that although Plaintiff reported being substantially limited by pain, the measures undertaken by Plaintiff for pain relief, including using the TENS unit, chiropractic care, ice, heat, and traction exercise were relatively conservative and not significant in contrast to the unrelenting extreme and disabling degree of pain alleged by Plaintiff. (T 21) Further, the ALJ stated that the level of pain Plaintiff suggests is not consistent with the absence of pain clinic treatment, "especially given the referral and not consistent with the demeanor often noted in the mental health records."[5] (Id.) While the ALJ did note that Plaintiff's prior theft conviction did not enhance her credibility, this reason is only one factor considered in a clearly articulated credibility finding which cites a number of reasons for finding Plaintiff not fully credible. (Id.)

Moreover, the ALJ found that Plaintiff's allegations of continuous disabling pain were contradicted by the evidence that Plaintiff is able to visit friends, attend church several times per week, watch television, crochet, read, play gospel music, sing in the choir, go to the grocery store, and do leg exercise in bed. (T 20, 21) The ALJ also noted that Plaintiff, on a typical day, gets milk or juice, takes medications, makes her bed, uses the broom reportedly while sitting, loads clothes into the washer, sleeps fifty percent of the day, and spends time looking for items at home. (T 20) While the ability to engage in everyday activities of short duration such as housework or fishing does not disqualify a claimant from receiving disability benefits, Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997), the Commissioner may properly rely on a claimant's daily activities, among other evidence, in determining whether a claimant is entitled to disability benefits. Johnson v. Barnhart, 268 F. Supp. 2d 1317, 1328 (M.D. Fla. 2002) (citations omitted); see also Markham v.

---

[5] Mental health treatment records from April to August 2003 consistently reflect comments such as " very jovial, personable person," "cooperative and generally pleasant," and "no agitation or irritability." (T 225-31)

Califano, 601 F.2d 533, 534 (10th Cir. 1979). Here, the ALJ did not exclusively rely on Plaintiff's daily activities in finding her testimony not fully credible; the ALJ determined, however, that the aggregate of Plaintiff's daily activities was inconsistent with her allegations of total disability.

Plaintiff's contention that the ALJ failed to adequately credit or integrate the findings and opinions of the examining health practitioners is without merit. The ALJ expressly discusses Plaintiff's treatment dating back to the 1997 car accident. For example, the ALJ states that Plaintiff obtained a whole body impairment from Dr. Martinez, who offered a recommendation for a 23% whole body permanent partial impairment rating at the that time. (T 14) The ALJ also incorporates the findings of Dr. Moorthy, Plaintiff's diagnosis of DRESS syndrome in December 2004, the findings of Dr. Kalin, and the findings of Plaintiff's mental health providers. (T 19-22)

Finally, there is little evidence, as Plaintiff contends, that the Commissioner erred in not giving weight to Plaintiff's complaints regarding her diabetic symptoms and the side effects of her medications including Wellbutrin, Paxil, Clonopin, and Desyrel. Plaintiff fails to point to evidence in the medical records that demonstrates that she complained of pain from her diabetes or consistently complained of side effects from her medications. In addition, the medical evidence does not support such a finding. See Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992).

For the foregoing reasons, there was no error in the ALJ's consideration of Plaintiff's pain testimony and substantial evidence supports the ALJ's credibility determination. See generally Allen v. Sullivan, 880 F.2d 1200, 1203 (11th Cir. 1989).

**C.**     Finally, Plaintiff claims that the ALJ erred in finding that Plaintiff has no severe impairment resulting from Plaintiff's psychological limitations. Thus, Plaintiff argues, the ALJ's reliance on the VE's testimony was based on an incomplete hypothetical (Dkt. 20 at 10).

20 C.F.R. § 416.920a governs the Commissioner's evaluation of mental impairments. The

12

Commissioner must first establish whether a claimant has a medically determinable mental impairment. 20 C.F.R. § 416.920a(b)(1). A mental impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 416.908. If the claimant has a medically determinable mental impairment, the Commissioner then rates the degree of functional limitation the impairment causes based on the degree to which it interferes with the claimant's ability to function "independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 416.920a(c)(2).

The ALJ's opinion must include "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. § 416.920a(e)(2). By regulation, the ALJ's decision must include a specific finding about the degree of limitation in each of four areas: (1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decompensation. Id.; 20 C.F.R. § 416.920a(c)(3). If the ALJ fails to address a claimant's condition in one of these areas, the case must be remanded for consideration of the omitted factor(s) and re-evaluation of a claimant's RFC in light of all factors. Moore v. Barnhart, 405 F.3d 1208, 1214 (11th Cir. 2005).

As a preliminary matter, contrary to Plaintiff's argument, the Commissioner found that Plaintiff's mental impairments are severe. The ALJ clearly included "bipolar v. borderline personality illness and dysthymia; history of post-traumatic stress disorder (PSTD), history of polysubstance abuse in partial to full remission" in his determination of Plaintiff's medically determinable severe impairments. (T 16, 24-25) Further, in proceeding through the analysis of Plaintiff's limitations due to her mental impairments, the ALJ specifically stated that Plaintiff "has evidence of the stated mental impairments and at this sequential step of the disability evaluation,

the claimant's established "Part A" mental impairments are considered with regard to the related functional limitations imposed by the same." (T 16-17) Therefore, the issue here is whether the Commissioner made specific findings regarding the degree of limitation in each of the four functional areas and whether those findings are supported by substantial evidence.

In his opinion, the ALJ throughly and in detail analyzed Plaintiff's mental impairments in light of the four functional areas and the Listings criteria. (T 17-18) The ALJ specifically discussed Plaintiff's mental health treatment records and history. (T 15) Moreover, the ALJ used the technique for evaluating mental impairments as dictated by the PRTF and incorporated its mode of analysis into his findings and conclusions. (T 17); see Moore, 405 F.3d at 1214. In sum, the ALJ concluded that mild to moderate limitations for the PRTF criteria are generally supported by the medical evidence. (T 17) The court agrees and finds no reversible error in the ALJ's evaluation of Plaintiff's mental impairments with regard to functional areas and Listings criteria.

Because the ALJ determined that Plaintiff's impairments, including mental impairments, do not medically equal an impairment found in the Listing of Impairments, the ALJ was then required to determine whether Plaintiff retains the RFC to perform her past relevant work or other work in the national economy. Because the ALJ determined that Plaintiff has no past relevant work, the burden shifted to the Commissioner to prove that there are other jobs Plaintiff can perform. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986) (citations omitted). The VE's testimony was then required to determine whether Plaintiff's RFC permits her to perform other work. Id. at 131-32. Plaintiff argues that ALJ posed an incomplete hypothetical to the VE, omitting Plaintiff's mental impairments, and then rejected the VE's testimony regarding Plaintiff's need for frequent absences, concentration deficiencies, and outbursts (Dkt. 20 at 10).

In posing hypothetical questions to a VE, the ALJ is required to include only those

restrictions he recognizes. See Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994). Contrary to Plaintiff's argument, the ALJ did recognize Plaintiff's mental restrictions and included mental limitations in his hypothetical question to the VE. Specifically, the ALJ included "no detailed or complex instructions, no close concentration or attention to detail for extended periods, no fast paced or assembly line work, no work with the general public, and no close interaction with supervisors" in his hypothetical to the VE, clearly recognizing any mild to moderate mental impairments Plaintiff has in the four functional areas as determined by the ALJ. (T 416-17)

Regarding Plaintiff's contention that the ALJ rejected the VE's testimony regarding Plaintiff's need for frequent absences, concentration deficiencies, and outbursts, this argument relates to Plaintiff's credibility and subjective pain testimony and is therefore without merit. In questioning the VE, Plaintiff's attorney asked the VE to assume Plaintiff was accurate in her testimony regarding her need to be off work for two whole days per week due to headaches or "overall bad days." (T 419) The VE testified that accepting Plaintiff's testimony as true essentially eliminates the jobs Plaintiff could do. (Id.) The VE also testified that an employer would not consistently tolerate an employee who is off task more than once per day (absent scheduled breaks) or an employee who has an "outburst" on a daily basis. (T 420-21, 422)

As previously discussed, substantial evidence supports the ALJ's finding that Plaintiff's testimony was not fully credible. It is the ALJ's responsibility, not the VE's, to determine whether a claimant is credible. See Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir. 1991) (citation omitted) (credibility determinations are the province of the Commissioner). Similarly, the VE did not conclude that Plaintiff has a "need" for outbursts; the VE merely testified as to hypothetical limitations. (T 419-24) Further, the ALJ accounted for Plaintiff's moderate limitations in the area of concentration, persistence, or pace by imposing limitations on her RFC, allowing for two

additional restroom breaks during the day, and allowing an absence one day per month. (T 25)

Therefore, the ALJ appropriately applied the regulatory framework in evaluating Plaintiff's mental impairments and Plaintiff is not entitled to relief on this issue.

**III.**

The ALJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner denying Plaintiff's application for Supplemental Security Income payments is therefore affirmed.

Accordingly and upon consideration, it is **ORDERED AND ADJUDGED** that:

(1)     the decision of the Commissioner is **AFFIRMED** and this case is **DISMISSED**, with each party to bear its own costs and expenses; and

(2)     the Clerk of Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**DONE AND ORDERED** in Tampa, Florida this 8th day of March, 2007.

ELIZABETH A JENKINS
United States Magistrate Judge

16